METROPOLITAN LIFE              )
INSURANCE COMPANY,             )
                              )
              Plaintiff,       )
                              )
       v.                      )            1:25cv1161
                              )
DIANE COOPER, et al.,          )
                              )
              Defendants.      )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Plaintiff's Motion (1) to Deposit Funds, (2) for Discharge, Injunctive Relief, and Dismissal of Plaintiff with Prejudice, and (3) for Award of Attorney's Fees and Costs" (Docket Entry 9 (the "Motion") at 1 (bold, all-cap, and underscored font omitted)) filed by Metropolitan Life Insurance Company (the "Plaintiff" or "MetLife").  For the reasons that follow, the Court should grant in part and deny in part the Motion.

**BACKGROUND**

On December 18, 2025, Plaintiff filed a six-page "Complaint in Interpleader" (Docket Entry 1 (the "Complaint") at 1)[1] pursuant to Rule 22 of the Federal Rules of Civil Procedure (the "Rules") (see id. at 2).  Per the Complaint, the Court possesses both federal-question jurisdiction and diversity jurisdiction over this matter,

---

[1]   Docket Entry page citations utilize the CM/ECF footer's pagination.

as complete diversity exists between the parties and "the action relates to an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ('ERISA')." (Id.) According to the Complaint:

"MetLife is an insurance company organized under the laws of the State of New York, with its principal place of business in New York." (Id. at 1.) "Defendant Diane Cooper ('Cooper') is the surviving sister of Thomas Eugene Fisher III ([at times, ]'the Decedent')" and resides in "Salisbury, North Carolina." (Id.) "Defendant Monica Overcash ('Overcash') was the domestic partner of and, at the time of his passing, had power of attorney for the Decedent." (Id.) Overcash resides in "Supply, North Carolina." (Id. at 1-2.) "Defendant Summersett Funeral Home, Inc. ('Summersett') is a North Carolina Corporation and the operator of a funeral home at its principal place of business in Salisbury, North Carolina." (Id. at 2.) "Summersett is named as a Defendant because it is a potential claimant to the insurance proceeds at issue in this matter based on an assignment executed by Cooper." (Id.)

"The Decedent was an employee of Daimler Trucks North America, LLC ('Daimler') and a participant in an ERISA-regulated employee welfare benefit plan ('the Plan') sponsored and maintained by Daimler." (Id.) "The Decedent received Basic Life Insurance benefits under the Plan funded by a Group Policy 117550-1-G ('the

2

Policy')" (id. at 3 (citing Exhibit A)) with MetLife (see Docket Entry 1-1 at 4). "On or around November 16, 2018, the Decedent designated Overcash as beneficiary of his Basic Life Insurance coverage." (Docket Entry 1 at 3 (citing Exhibit B).) "On or around October 19, 2022, the Decedent changed the beneficiary of his Basic Life Insurance coverage to Cooper, effectively removing Overcash as a beneficiary." (Id. (citing Exhibit C).)

"The Decedent passed away on April 7, 2025 due to Type 1 Diabetes, with other significant conditions contributing to his passing identified as dementia, severe protein-calorie malnutrition, and chronic kidney disease." (Id. (citing Exhibit D).) "At the time of his death, the Decedent had $124,000.00 in Basic Life Insurance coverage under the Policy that were payable upon his death (the 'Proceeds')." (Id.) "On or around April 14, 2025, Cooper, as a putative beneficiary of the Decedent, executed an assignment of the Decedent's life insurance proceeds in the amount of $6,030.65 in favor of Summersett to cover funeral services and related expenses for the Decedent." (Id. (citing Exhibit E).) "On or around April 21, 2025, Cooper submitted a claim form to MetLife for the Proceeds." (Id. (citing Exhibit F).)

Thereafter,

[o]n or around April 22, 2025, Overcash submitted a letter to MetLife in which she asserted her claim to the Proceeds and contested any change of beneficiary to Cooper as potentially "false[] and fraudulent[]," because she contended that the Decedent had an impaired mental state and lacked capacity to change the beneficiary of

3

his Basic Life coverage in the ten [sic] years preceding
his passing.

(Id. at 3-4 (brackets in original) (citing Exhibit G).) "On or
around August 21, 2025, Cooper, through counsel, challenged
Overcash's entitlement to the Proceeds via email and reasserted her
claim." (Id. at 4 (citing Exhibit H).)

"At this time, MetLife cannot safely determine which of the
Defendants to whom the Proceeds are payable." (Id.) "MetLife may
be exposed to multiple liability or litigation unless the Proceeds,
plus any applicable interest, are deposited into the Registry of
this Court and the Court determines the correct payee." (Id.) In
that regard:

> [O]n the one hand, MetLife has a statutory duty under
> ERISA to pay the Proceeds in conformity with the Plan and
> the Policy, which expressly allow an insured to change
> their beneficiary designations. *Kennedy v. Plan Adm'r
> for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009).
> On the other hand, MetLife has received information
> suggesting that the Decedent may have suffered from a
> mental impairment at the time of the latest change in
> beneficiary to Cooper.

(Docket Entry 1 at 4.) "If MetLife were to pay the Proceeds to
Cooper, it faces potential litigation by Overcash if the Decedent's
mental capacity at the time of the October 19, 2022 change in
beneficiary is challenged." (Id.) "Likewise, if MetLife were to
disregard the latest change in beneficiary and pay the Proceeds to
Overcash, it faces potential litigation by Cooper and/or Summersett
as assignee of life insurance proceeds by Cooper as a putative
beneficiary thereof." (Id. at 4-5.)

4

"As a mere stakeholder, MetLife has no interest in the Proceeds (except to recover its attorney's fees and costs of this action)." (Id. at 5.) "MetLife therefore respectfully requests that this Court allow this interpleader action to proceed and determine to whom the Proceeds should be paid." (Id.) "MetLife is ready, willing, and able to pay the Proceeds in accordance with the terms of the Policy and the Plan, in such amounts and to whichever Defendant the Court shall designate." (Id.) "MetLife will deposit into the Registry of the Court the Proceeds, plus any applicable interest, if applicable, for disbursement in accordance with the Judgment of this Court." (Id.)

MetLife submitted various exhibits in support of its Complaint. (See Docket Entries 1-1 to 1-8.) As relevant here, the Plan's cover page bears the title "Your Benefit Plan" and indicates that it applies to "All Full-Time Employees" at Daimler's "Cleveland Shop." (Docket Entry 1-1 at 2 (bold and all-cap font omitted).) In turn, Exhibit B and Exhibit C each contain a one-page document entitled "Benefits Enrollment Confirmation" (each, a "Confirmation Statement"), described as a "Confirmation Statement for [Decedent]," submitted by "HR Practitioner" on a specified date and time. (Docket Entry 1-2 at 2 (bold font omitted); Docket Entry 1-3 at 2 (bold font omitted).) Each Confirmation Statement details certain "Pre-Tax Benefits" and "Post-Tax Benefits," the associated "Employee Pay Period Cost" and "Employer Pay Period Cost," and the

5

resulting "Total Pay Period Cost" to the employee and the employer. (Docket Entry 1-2 at 2 (bold font omitted); Docket Entry 1-3 at 2 (bold font omitted).)  The final section of the Confirmation Statement, entitled "Your Beneficiaries," lists the beneficiary's name, relationship to the employee, benefit, beneficiary type, and allocation percentage.  (Docket Entry 1-2 at 2 (bold font omitted); Docket Entry 1-3 at 2 (bold font omitted).)  Submitted on November 16, 2018, the first Confirmation Statement lists "Monica C Overcash" with an "Other" relationship to Decedent as the "Primary" beneficiary of, as relevant here, Decedent's life insurance coverage, entitled to 100% of that insurance.  (Docket Entry 1-2 at 2.)  Submitted on October 19, 2022, the second Confirmation Statement identifies "Diane Cooper," Decedent's "Sibling," as the "Primary" beneficiary of Decedent's life insurance coverage, entitled to "100%" of that insurance.  (Docket Entry 1-3 at 2.)

The record also contains a certified copy, dated April 15, 2025, of Decedent's death certificate.  (See Docket Entry 1-4 at 2.)  Filed on April 14, 2025, the death certificate indicates that Decedent died at age 62, having "[n]ever married," with a "Usual Occupation" of "Truck Part Assembly" in the "Truck Manufacturing" industry.  (Id. (all-cap font omitted).)  It further specifies that Decedent died on April 7, 2025, in a "Hospice Facility," although he resided with Cooper, his "Sister," in Salisbury, North Carolina, the place of his burial.  (Id.)  Per the death certificate,

6

Summersett provided funeral home services, and Decedent died of "Natural" causes, specifically "Type 1 Diabetes," from which he suffered for more than a year. (Id.) He also suffered from dementia, chronic kidney disease, and a form of malnutrition. (See id.)

MetLife additionally submitted an assignment of insurance benefits, dated April 14, 2025, by Cooper to Summersett for $6,030.65 for funeral expenses. (See Docket Entry 1-5 at 2-3.) This "Insurance Assignment" (id. at 2 (all-cap font omitted)) contains a copy of the contract between Cooper and Summersett for Decedent's funeral (see id. at 3). That contract states, in part:

> In the events [sic] the holder of this Contract initiates any legal proceedings or incurs any legal expense or attorney [sic] fees in exercising any of its rights or remedies on default, such expense and reasonable attorney [sic] fees may be added to the principal balance due and Purchaser shall be liable for the payment of same as an additional obligation under this instrument.

(Id.) Coordinately, the record contains a MetLife "Life insurance claim form" (Docket Entry 1-6 at 2 (bold font omitted)) that Cooper signed under penalty of perjury on April 21, 2025 (see id. at 4). (See id. at 2-5.)

Next, MetLife submitted a handwritten letter, dated April 22, 2025, from Overcash. (See Docket Entry 1-7 at 2-3.) This letter states:

    Attn - Claim Investigators
    REF - THOMAS EUGENE FISHER III

MR. Fisher passed away on 4-7-25. My name is Monica Overcash. I have been with Tom for 20 yrs. I am Tom's power of attorney to his estate, and his beneficiary on his life insurance policy.

The past 6 yrs he has been sick with sepsis, in ~~comma~~ coma that left him disabled after 3 mths in hospital, 2 mths in rehab, endless physical therapy. I took him to all doctors appt, P.T. appt, took care of everything he needed for any improvement in condition. I nursed him night & day for 3 yrs more before his last decline in health.

We talked about outstanding bills, burial fees, and he wanted to make sure I was taking care of finicially. I know my name is on that policy. I was with him when he filled out paperwork; and we went over everything before he died.

Tom has been estranged from his sister Diane Cooper for as long as I've known him. For stealing from him & his parents. She tried to change things at hospital when he was in coma and I caught her. She had a man with her posing as Tom's son to take over his care from me. However Tom does not have any children.

So it is with certainty if any changes were made putting Diane Cooper as beneficiary this was done falsely, & fraudulantly.

I need your help to research this for not only dates, any changes, but also any phone conversations that were recorded for verification of Tom's voice.

Thank You,
Monica Overcash

(Id. at 2-3 (all errors and formatting in original).)

Finally, MetLife submitted a series of emails sent to MetLife in July and August of 2025. (See Docket Entry 1-8 at 2-6.) The first email, from attorney Kathryn Setzer on August 21, 2025, states:

8

I represent Ms. Cooper and on behalf of Diane Co[o]per, thank you for your letter of August 13, 2025 which she just received.  She has reviewed that correspondence and she does not consent in anyway to a resolution with Monica Overcash due to the following evidence:

1.  Brian Worthy's statement that he was the employee of the Daimler who was tasked and did change the decedent's beneficiary to Diane Cooper that is below; and

2.  Ms. Overcash's note attached and below that states she waives all claims and will no longer take care of Mr. Fisher on 10/13/22.

We would ask that the costs of the litigation be taxed to Ms. Overcash due to the overwhelming evidence that she "abandoned" Mr. Thomas and wrote such, in addition to an unrelated employee's opinion that these were his wishes.

Should you need anything else from me, please do not hesitate to contact me.

(Id. at 2.)

The second email, sent on July 14, 2025 (see id.), states:

MetLife

I call to verify that I, Brian K. Worthy, Benefits Representative UAW Local 3520 did speak with Thomas Fisher III regarding changing his beneficiary.  Upon speaking with him I found him to be in a good mental state of mind and very alert and responded well to any of my questions.  At the time of our conversation, he was calling to change his beneficiary information in which I assisted him in completing on October 19, 2022.  He stated that he was residing with his sister at the time of the change.

I hope this information is beneficial in rendering your decision.

(Id. at 2-3; see also id. at 3 (containing signature block with

title "UAW Local 3520 Benefits Representative" and Daimler email

address).)

9

The third email, sent by Brian Worthy on July 22, 2025, states: "Attached is a letter from Monica Overcash relinquishing all responsibility concerning Thomas Fisher. The letter was sent to Diane Cooper on 10-18-2022. The letter was provided to me, to be sent to [M]et[L]ife." (Id. at 5 (paragraph break omitted).) The referenced attachment contains a picture of a handwritten document. (See id. at 6.) The first portion of this document, which appears to match the handwriting on Overcash's letter to MetLife, states:

> To Whom It M[a]y Concern:
>
> I, Monica Overcash, am no longer responsible for the welfare of Thomas Fisher III as of 10-13-22. I am turning responsibility over to his sister, Diane Fisher. (Cooper)

(Id.) Beneath this message appear signatures for "Monica Overcash" and, in a different handwriting, "Tom Fisher." (Id.) Underneath those signatures appears another handwritten statement, in yet another hand. (See id.) Signed by "Diane Fisher Cooper" (id.), this message states: "Ms. Overcash threw T.E. Fisher my brother Out of the house and sent [him] BACK to Salisbury to me. (Diane Fisher Cooper)[.]" (Id. (emphasis in original).)

Using process servers, MetLife served the Complaint on Cooper, Overcash, and Summersett (collectively, at times, the "Defendants"). (See Docket Entries 4-6.) Overcash failed to respond (see Docket Entries dated Dec. 18, 2025, to present), but

10

Case 1:25-cv-01161-UA-LPA   Document 11   Filed 05/14/26   Page 10 of 25

Summersett and Cooper filed answers to the Complaint (see Docket

Entries 7-8).  As relevant here, Cooper's answer states:

> My name is Diane Fisher Cooper[.]  I am Tom Fisher['s]
> sister[.  M]y brother pass[ed ]away 4•7•25[.]  I took
> care of him from Oct 22 till Tom pass[ed ]away.
>
> Ms. Overcash sent a <u>NOTE</u> saying that when Tom came back
> up here to me to live with my husband and [me] that Ms
> Overcash was <u>NO LONGER RESPONSIBLE</u> for his well-being[.]
>
> Summerset[t] funeral home is to be[] pa[id ]out with his
> Met Life Ins. then I will get the rest of the insurance
> money[.]

(Docket Entry 8 at 1 (emphasis in original) (underscoring

adjusted).)

For its part, Summersett filed an answer to the Complaint and

a cross-claim against Cooper for recovery of the funeral expenses

plus "reasonable expense [sic] and attorney [sic] fees for [this]

action to collect the unpaid debt" (Docket Entry 7 ("Summersett's

Pleading") at 4).  (See id. at 1-8.)  Summersett's Pleading asks

the Court to:

> 1. From the proceeds of the policy at issue, enter
> judgment in favor of Summersett for the assignment of
> benefits amount agreed by Cooper for the just and right
> burial expenses of the decedent assigned in good faith by
> Cooper as the named beneficiary.
>
> 2. Deny all claims of Overcash which claims are not
> supported by admissible evidence or a bona fide claim for
> benefits.
>
> 3. Pay the balance after assignment to Cooper based on
> the decedent's lawful beneficiary form.
>
> 4. Deny the Plaintiff MetLife be paid any funds from such
> proceeds for cost or attorney's fees based on the filing
> of this Interpleader action without receiving a bona fide

11

> application for benefits by Overcash or any actual evidence of undue influence or lack of capacity contemporaneous to the change in beneficiary by the decedent.
>
> 5. Order reasonable expense [sic] and attorney [sic] fees be paid to Summersett, from Cooper, pursuant to the contract between the parties, and/or from the other parties to this litigation.

(Id. at 4.)

Thereafter, Plaintiff filed the Motion, seeking to enjoin Defendants from instituting any action "against MetLife for recovery of the life insurance benefits (the 'Plan Benefits') payable under the [Plan] plus any applicable interest, by reason of the death of [Decedent]." (Docket Entry 9 at 1.) The Motion additionally seeks leave to "pay into the Registry of the Court the Plan Benefits plus any applicable interest, less MetLife's reasonable attorney's fees and costs of $3,686.36." (Id. at 2.) The Motion further asks that, "upon such payment," the Court discharge MetLife "from any further liability to Defendants under the Plan" and dismiss MetLife "from this action with prejudice." (Id.) Finally, the Motion requests "[t]hat Defendants be required to litigate or settle and adjust between themselves their claims for the Plan Benefits, or upon their failure to do so, that this Court settle and adjust their claims and determine to whom the Plan Benefits, plus any applicable interest, should be paid." (Id.)

In support of this Motion, MetLife filed a declaration of counsel and a brief. (See Docket Entries 10 to 10-1.) A total of

12

six pages inclusive of the caption and certificates (see Docket Entry 10 (the "Brief") at 1-6), the Brief contains less than a page and a half of "Background" (id. at 1 (bold and all-cap font omitted); see id. at 1-2), two pages of "Law & Argument" (id. at 3 (bold and all-cap font omitted); see id. at 3-4), and a one-sentence conclusion (id. at 5). For its part, the "Declaration of [Plaintiff's counsel]" (Docket Entry 10-1 (the "Declaration") at 2 (bold, underscored, and all-cap font omitted)) reflects the following:

Plaintiff's counsel's "current standard billable rate is $815/hour" and the "current standard billable rate" for the paralegal, Ms. Couch, who worked on this matter "is $450/hour." (Id.) "Work performed by Womble Bond Dickinson[, counsel's firm,] on the Case is billed to Plaintiff at a discounted rate pursuant to a confidential panel counsel arrangement." (Id. at 3.) "In total, Womble Bond Dickinson has, through April 14, 2026, expended 8.3 hours on the case: 7.1 for [Plaintiff's counsel] and 1.2 for Ms. Couch, which has caused Plaintiff to incur $2,578.50 in fees." (Id.) More specifically,

> [t]ime expended on the Case was spent reviewing the claim file for this matter and the claims made to the insurance proceeds by the defendants, drafting the original complaint and preparing the exhibits therefor, communicating with Defendants and counsel of record, and preparing the motions for deposit of funds and discharge of Plaintiff from the action.

13

(Id.)  "Additionally, Plaintiff has incurred costs in the amount of $1,107.86, consisting of the initial filing fee for the complaint ($405.00) in the Case and process server fees ($702.86) for service of the three Defendants."  (Id.)  Accordingly, "Plaintiff requests an award of $3,686.36 in costs and attorney's fees."  (Id.)

Notably, the day after Plaintiff filed the instant matter, it filed a second interpleader action, Metropolitan Life Insurance Company v. Kathy Baker, No. 1:25cv1168 (M.D.N.C. Dec. 19, 2025) (the "Parallel Proceeding"), with a very similar "Complaint in Interpleader," id., No. 1:25cv1168, Docket Entry 1 at 1 (M.D.N.C. Dec. 19, 2025).  A week after filing the Motion, Brief, and Declaration, Plaintiff filed substantively the same materials in the Parallel Proceeding, updated to reflect the particular facts of that matter.  See id., Docket Entries 11 to 12-1 (M.D.N.C. Apr. 21, 2026).  Plaintiff seeks "$4,025.50 in costs and attorney's fees" for the Parallel Proceeding, consisting of "$2,821.50 in fees" for "8.8 hours" of work by Plaintiff's counsel (8 hours) and Ms. Couch (0.8 hours), as well as "$1,204.00" in costs, "consisting of the initial filing fee for the complaint in the Case ($405.00) and process server fees ($799.00)."  Id., Docket Entry 12-1 at 3.

## DISCUSSION

"Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund."  Security Ins. Co. of

14

<u>Hartford v. Arcade Textiles, Inc.</u>, 40 F. App'x 767, 769 (4th Cir. 2002). "The classic circumstance that interpleader has addressed is where one party, a 'stakeholder,' has money or other property that is claimed, or may be claimed, by two or more other parties, the 'claimants,' creating a risk of inconsistent claims to the property or judgments against the stakeholder that exceed the value of the property." <u>AmGuard Ins. Co. v. SG Patel & Sons II LLC</u>, 999 F.3d 238, 244 (4th Cir. 2021); <u>see also</u> <u>id.</u> at 245 (explaining that interpleader "may be invoked not only when claimants have already made a claim to the stakeholder's property but also when the claimants *may make* such a claim in the future" (emphasis in original)). "The interpleader procedure permits the stakeholder to join all claimants and efficiently resolve their claims to a corpus in a single forum and proceeding." <u>Id.</u> at 244 (internal quotation marks omitted). "In its strict (or 'pure' or 'true') form, therefore, the stakeholder has no interest in the money or property at issue but simply deposits the money or property with the court for distribution to the claimants." <u>Id.</u> "Stated otherwise, the stakeholder makes no claim to a part of the money or property for itself and is 'indifferent' as to which claimant should receive the money or property." <u>Id.</u>

"Today, the interpleader procedure can be pursued in federal court under two different provisions, which differ somewhat in practice and benefit." <u>Id.</u> As relevant here, "[Rule] 22 ('rule

15

interpleader') functions much like joinder rules and can be invoked only when federal jurisdiction is otherwise established," typically through "a court's diversity jurisdiction." Id. "Alternatively, an interpleader action can be filed under 28 U.S.C. § 1335 ('statutory interpleader')," which requires, inter alia, "that at least two claimants are not co-citizens, even if others are." Id. at 244-45.[2] "Rule interpleader functions much like a joinder rule and provides no additional attributes of the kind available under statutory interpleader." Id. at 245.

"An interpleader action generally proceeds in two stages." Midland Nat'l Life Ins. Co. v. Wilkes, No. 1:19cv772, 2020 WL 429206, at *2 (M.D.N.C. Jan. 28, 2020) (internal quotation marks omitted). "First, the [C]ourt determines whether the stakeholder has properly invoked interpleader." Id. (internal quotation marks omitted). And,

> [i]n determining whether interpleader is proper, the Court must consider whether: (1) it has jurisdiction over the suit; (2) a single fund is at issue; (3) there are adverse claimants to the fund; (4) the stakeholder is actually threatened with multiple liability; and (5) equitable concerns would prevent the use of interpleader.

Id. (internal quotation marks and brackets omitted). "If interpleader is appropriate, the [C]ourt then dismisses the

---

2   This action thus does not qualify for statutory interpleader.  (See Docket Entry 1 at 1-2 (identifying all Defendants as North Carolina residents).)

16

plaintiff from the action and, in the second stage, determines the rights of the remaining defendants." Id.

"Here, Plaintiff properly invoked [rule] interpleader and therefore should be dismissed from this action [after depositing the relevant funds with the Court]." Id. To begin, the Court possesses jurisdiction over this matter as, inter alia, "the parties are diverse and the amount in controversy exceeds $75,000," id.; see 28 U.S.C. § 1332(a). (See Docket Entry 1 at 1-3.)[3] Next, this case involves a single fund, Decedent's life insurance Proceeds. (See id. at 3.) As for the fifth (and final) factor, "no equitable concerns prevent the use of interpleader," Midland, 2020 WL 429206, at *2. (See, e.g., Docket Entries 4-6 (reflecting service of process on all Defendants).)

However, the third and fourth factors present a much closer issue, as it appears at best questionable whether Overcash constitutes a viable claimant (adverse to Cooper/Summersett) such that MetLife "is actually threatened with multiple liability," Midland, 2020 WL 429206, at *2. In this regard, the record contains only Overcash's unsworn April 2025 letter, the veracity of which the other evidence in the record seriously undermines.

---

3    In a Rule 22 interpleader action, "[a] stakeholder insurer[] . . . ha[s] interests sufficiently adverse to those of the claimants so that the cause [i]s properly within the diversity jurisdiction of the district court at the time of filing." Leimbach v. Allen, 976 F.2d 912, 917 (4th Cir. 1992). Further, "dismissal of the stakeholder before final judgment [will] not destroy [this] jurisdiction." Id.

17

(Compare, e.g., Docket Entry 1-7 at 2-3 (asserting that, inter alia, (i) Decedent "has been estranged from" Cooper for "20 yrs" and had for "[t]he past 6 yrs . . . been sick with sepsis, in [a] coma that left him disabled after 3 mnths," and that "[Cooper] tried to change things at [the] hospital when [Decedent] was in [a] coma"), with Docket Entry 1-3 at 2 (reflecting that Decedent designated Cooper as beneficiary at time when he received regular paychecks), and Docket Entry 1-4 at 2 (indicating on death certificate that Decedent resided with Cooper and died from diabetes, without mention of sepsis), and Docket Entry 1-8 at 2-3 (indicating Daimler Benefits Representative "found [Decedent] to be in a good mental state of mind and very alert" when they spoke in 2022 regarding beneficiary change).)

Moreover, the record does not indicate what, if anything, MetLife did to investigate Overcash's letter and/or the validity of Decedent's designation of Cooper as his beneficiary. (See Docket Entries 1 to 10.) Nor does it reflect any efforts by Overcash vis-à-vis the proceeds beyond the letter, dated nearly a year before MetLife filed the Motion. (See id.; see also Docket Entry 10 at 2 ("Despite having been served, and despite the subsequent outreach of [Plaintiff's counsel], Overcash has not appeared in this matter.").) Nevertheless, given Overcash's letter and status as a previous beneficiary, the Court should find that this matter satisfies the third and fourth factors. See, e.g., AmGuard, 999

18

F.3d at 245 (explaining that Rule 22 "may be invoked not only when claimants have already made a claim to the stakeholder's property but also when the claimants *may make* such a claim in the future" (emphasis in original)).

Accordingly, the Court should grant Plaintiff's request to deposit the Proceeds, plus applicable interest, into the Registry of the Court and, upon such payment, should dismiss Plaintiff from this action, discharging it from further liability as to the deposited money. See, e.g., Midland, 2020 WL 429206, at *2. Upon Plaintiff's dismissal, the Court should realign the remaining parties with Cooper and Summersett as plaintiffs and Overcash as the defendant, see Manufacturers & Traders Tr. Co. v. Del Conca USA, Inc., Civ. Action No. 16-3346, 2017 WL 3175567, at *4 (D. Md. July 25, 2017), and, given Overcash's failure to defend this action (see Docket Entry 6 at 1 (averring to service of Complaint on Overcash); see also Docket Entries dated Dec. 18, 2025, to present (lacking any filing from Overcash)), should enter default against Overcash, see Fed. R. Civ. P. 55(a).

Plaintiff also asks that the Court enjoin Defendants "from instituting any action or proceeding . . . against MetLife for recovery of the [Proceeds]." (Docket Entry 9 at 1.) As this matter involves rule interpleader, not statutory interpleader, "[t]he usual standards for obtaining a permanent injunction must be satisfied in order for [MetLife] to obtain the injunction it

seeks." <u>New York Life Grp. Ins. Co. of NY v. Maxwell</u>, 645 F. Supp. 3d 26, 36 (N.D.N.Y. 2022). In other words,

> MetLife must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

<u>Pitts v. Metropolitan Life Ins. Co.</u>, No. 3:23cv141, 2024 WL 3974239, at *7 (E.D. Va. Aug. 28, 2024) (brackets omitted) (quoting <u>Monsanto Co. v. Geertson Seed Farms</u>, 561 U.S. 139, 156-57 (2010)). MetLife does not attempt to make this showing. (<u>See</u> Docket Entry 10 at 3-4 (lacking any discussion of injunctive relief and associated factors).) "Further, even if a judgment were entered against MetLife despite the Court's order [authorizing deposit of the Proceeds and dismissing MetLife from this action], money damages could ultimately compensate MetLife's injury." <u>Pitts</u>, 2024 WL 3974239, at *7 (internal quotation marks and brackets omitted). "MetLife has therefore failed to show irreparable harm, and the Court [should] not grant MetLife's request to permanently enjoin . . . [D]efendants from instituting other proceedings against it." <u>Id.</u>

Finally, MetLife seeks to recover from the Proceeds "attorney's fees and costs of $3,686.36." (Docket Entry 9 at 2.) "Neither [Rule] 22 nor the interpleader statute contains an express reference to costs or attorney's fees, although the latter does

20

state that the court has the power to 'make all appropriate orders to enforce its judgment.'" 7 <u>Wright & Miller's Federal Practice & Procedure</u> § 1719 (3d ed.). "Historically, federal equity courts felt free to award costs and counsel fees to a successful stakeholder when circumstances indicated it was appropriate to do so." <u>Id.</u>; <u>see also, e.g.</u>, <u>Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Sprague</u>, 251 F. App'x 155, 156 (4th Cir. 2007) ("Despite the lack of an express reference in the federal interpleader statute to costs or attorney's fees, federal courts have held that it is proper for an interpleader plaintiff to be reimbursed for costs associated with bringing the action forward.") (collecting cases).

As such, "an interpleading plaintiff may be reimbursed for its costs at the district court's discretion." <u>Trustees of Plumbers</u>, 251 F. App'x at 156. To that end,

> [r]elevant considerations guiding the court's exercise of discretion include whether the opposing party has acted in bad faith, whether the interpleader is disinterested in the litigation, whether interpleader plaintiff seeks to improperly transfer an ordinary cost of doing business to the claimants, and whether attorney's fees and costs would seriously deplete the fund deposited in court through the allowance of large fees to interpleader plaintiff's counsel.

<u>State Farm Life Ins. Co. v. Littleton</u>, No. 7:20cv36, 2020 WL 4432381, at *3 (E.D.N.C. July 31, 2020); <u>see also, e.g.</u>, <u>Travelers Indem. Co. v. Israel</u>, 354 F.2d 488, 490 (2d Cir. 1965) ("We are not impressed with the notion that whenever a minor problem arises in

the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business [to] their insureds by bringing an action for interpleader."); Hunter v. Federal Life Ins. Co., 111 F.2d 551, 557 (8th Cir. 1940) (observing that "[t]he institution of a suit in interpleader, including the depositing of the fund in the registry of the court and the procuring of an order of discharge of the stakeholder from further liability, does not usually involve any great amount of skill, labor or responsibility," so "the amount allowed for [any expenses and] fees should be modest").

Here, the record contains neither an explanation of MetLife's delay in bringing the interpleader action nor an indication that MetLife sought to resolve this matter without litigation in the four months between receiving Cooper's counsel's email and filing the Complaint. (See, e.g., Docket Entries 1 to 1-8.) Moreover, on the current record, Overcash's unsworn letter constitutes an incredibly slim reed upon which to disregard Decedent's 2022 designation of Cooper as his beneficiary, particularly given the apparent absence of any further outreach by Overcash regarding the insurance proceeds. (See id.; see also Docket Entries dated Dec. 18, 2025, to present (lacking any participation from Overcash).) Thus, the evidence before the Court suggests that MetLife pursued this interpleader action largely for its own benefit, to secure protection from suit for its handling of Decedent's life insurance

22

policy. Further, as a consequence of MetLife's refusal to honor Decedent's designation of Cooper and Cooper's assignment of proceeds to Summersett for Decedent's funeral costs, both Cooper and Summersett apparently incurred attorney's fees (see Docket Entry 1-8 at 2; Docket Entry 7 at 4-5), which expense Summersett also seeks to recover through this litigation (see Docket Entry 7 at 4).[4]

Additionally, the record establishes that this matter constitutes a routine aspect of Plaintiff's business. For instance, the Declaration reveals that Plaintiff has secured "a confidential panel counsel arrangement" with a major law firm that provides a significantly "discounted rate" for its interpleader litigation (Docket Entry 10-1 at 3; see id. at 2-3 (reflecting approximately 60% reduction from "standard billable rate")), suggesting a certain frequency of such litigation. See also Metropolitan Life Ins., Docket Entry 12-1 at 2-3 (same). Moreover, MetLife's filings in the Parallel Proceeding confirm the formulaic nature of MetLife's Complaint, Motion, Brief, and Declaration. See id., Docket Entries 1, 11 to 12-1. Finally, MetLife's litigation strategies increased the cost of this litigation, as MetLife opted to employ process servers (see Docket Entries 4-6) at a cost of more than $700 (see Docket Entry 10-1 at 3) rather than utilizing

---

[4] Given the insurance assignment, MetLife knew that any delay in paying Summersett risked this possibility. (See Docket Entry 1-5 at 2-3.)

23

a "designated delivery service," N.C. R. Civ. P. 4(j)(1), or certified mail to serve Defendants, <u>see</u> Fed. R. Civ. P. 4(e)(1) (authorizing service by "following state law for serving a summons in . . the state where the district court is located or where service is made"); N.C. R. Civ. P. 4(j)(1) & (6) (authorizing service of individuals and corporations by "registered or certified mail" and "designated delivery service"). Under the circumstances, the Court should deny Plaintiff's request for attorney's fees and expenses.[5]

<u>**CONCLUSION**</u>

This matter satisfies the criteria for a Rule 22 interpleader, but MetLife has not established the propriety of injunctive relief. Additionally, the circumstances of this action militate against an award of costs and attorney's fees to MetLife. Finally, despite service of the Complaint upon her, Overcash has failed to participate in this action.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 9) be granted in part and denied in part as follows: (i) the Court should authorize MetLife to deposit the Proceeds, plus applicable interest, into the Registry of the Court for ultimate disposition by the Court, and (ii), upon such payment, the Court should

---

5 Further, MetLife does not qualify as a "prevailing party" and thus "cannot recover [its] attorney's fees and costs under [29 U.S.C.] § 1132(g)(1)," which grants the Court discretion to award attorney's fees and costs in an ERISA action. <u>Trustees of Plumbers</u>, 251 F. App'x at 156 n.*.

24

(A) dismiss MetLife from this action, discharging it from further liability as to the deposited money; (B) realign the parties with Cooper and Summersett as plaintiffs and Overcash as the defendant; and (C) enter default against Overcash.

This 14th day of May, 2026.

        /s/ L. Patrick Auld

        **L. Patrick Auld**
        **United States Magistrate Judge**